People v Islas (2025 NY Slip Op 51106(U))

[*1]

People v Islas

2025 NY Slip Op 51106(U)

Decided on July 16, 2025

Criminal Court Of The City Of New York, Bronx County

Krompinger, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 16, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Jovani Islas, Defendant.

Docket No. CR-029617-24BX

For the People: ADA Ashley Akl, Esq., The Office of Darcel D. Clark, District Attorney of Bronx County, 198 E. 161st St, Bronx NY 10451.
For the Defendant: Molly Harwood, Esq., The Bronx Defenders, 360 E. 161st Street, Bronx NY 10451.

Scott M. Krompinger, J.

Upon the foregoing papers, the defendant Jovani Islas ("Defendant") moves for an order (1) finding that the People's certificate of compliance ("COC") and supplemental certificate of compliance ("SCOC") filed on January 28, 2025 and March 5, 2025, respectively, were improper under Criminal Procedure Law ("CPL") 245.20 and 245.50 because required materials were not made available to defense counsel and the prosecution exercise good faith and due diligence prior to filing each certificate; (2) deeming the prosecution not ready for trial; (3) dismissing the charges against Defendant because of the prosecution's failure to comply with its speedy trial obligations pursuant to CPL 170.30 (1) (e) or CPL 245.80; (4) or in the alternative, precluding the prosecution from introducing at trial all evidence without timely notice; suppressing evidence, or alternatively granting pre-trial Huntley/Dunaway, and Ingle/Rossi/Johnson/Mapp/Ayala/Dunaway hearings; a Sandoval and Molineux/Ventimiglia hearing; and reserving the right to make additional motions; and such other and further relief as this Court deems just and proper.
The People oppose the motion.
(I) Background
By criminal complaint dated November 18, 2024, Defendant stands charged with violating one count of Vehicle and Traffic Law ("VTL") § 1192 (2), operating a motor vehicle [*2]while under the influence of alcohol or drug, and other related charges. The complaint alleges that on November 18, 2024, at approximately 2:30AM at the corner of East 171st Street and Jerome Avenue in the Bronx, New York, P.O. Luis Sanchez observed Defendant operating a motor vehicle. P.O. Sanchez observed Defendant to have a flushed face and watery bloodshot eyes, and a strong odor of an alcoholic beverage emanating from his breath. Defendant allegedly stated to the officer "I am coming from club patron. I had one shot." Defendant submitted to a chemical analysis of Defendant's breath and his blood alcohol content displayed on the machine was 0.096% of one per centrum by weight.
Defendant was arraigned on November 18, 2024. The People filed and served a COC and SOR on January 28, 2025. They then filed a SCOC on March 5, 2025. On February 18, 2025, defense counsel emailed the assigned ADA about certain discovery deficiencies, including: (1) missing New York Police Department ("NYPD") arrest photographs; (2) review of the body-worn camera footage revealed two civilian witnesses, but the People did not turn over their names and contact information; (3) the activity logs for the fifteen (15) officers that were turned over were either unrelated to this arrest, not finalized, or were for officers not working that day; and (4) the simulator solution documentation provided was from 2019 — 2021. Defense counsel requested the "most up to date simulator solutions log related to this arrest." The People responded to Defendant's inquiry and following subsequent court appearances the parties were directed to meet and confer with respect to outstanding discovery disputes. On March 14, 2025, this Court held a COC conference, and the instant motion schedule was set.
(II) Standard of Review
Defendant moves for an order deeming the COC and supplemental COC's as invalid and dismissing this matter pursuant to CPL 30.30 (1) (d) and 170.30 (1) (e). A defendant seeking a speedy trial dismissal pursuant to CPL 30.30 meets his or her initial burden on the motion simply "by alleging only that the prosecution failed to declare readiness within the statutorily prescribed time period" (People v Goode, 87 NY2d 1045, 1047 [1996], quoting People v Luperon, 85 NY2d 71, 77-78 [1995]). The "speedy trial clock" is tolled when the People declare ready for trial (People v Labate, 42 NY3d 184, 190 [2024]). To be deemed ready for trial, the People must file their SOR and "serve upon the defendant and file with the court a certificate of compliance," certifying that they have complied with their discovery obligations (CPL 245.50 [1]; 245.50 [3]).
"Pursuant to CPL 245.50 (3), '[n]otwithstanding the provisions of any other law, absent an individualized finding of special circumstances in the instant case by the court before which the charge is pending, the prosecution shall not be deemed ready for trial for purposes of section 30.30 of this chapter until it has filed a proper certificate [of compliance] pursuant to [CPL 245.50 (1)]'" People v Macaluso, 230 AD3d 1158, 1159 [2d Dept 2024], lv to appeal denied, 42 NY3d 1036 [2024]). If a proper COC has not been filed, the SOR must be deemed invalid and illusory, and thus insufficient to stop the speedy trial clock (People v England, 84 NY2d 1, 4 [1994]).
CPL 245.50 and 30.30 require that due diligence be conducted prior to filing a COC (People v Bay, 41 NY3d 200, 212 [2023]). Where, as here, a defendant seeks dismissal on the grounds that "the People failed to exercise due diligence and therefore did not file a proper COC," it is the People's burden to establish "that they did, in fact, exercise due diligence and made reasonable inquiries prior to filing the initial COC despite a belated or missing disclosure" [*3](id. at 213). "If the prosecution fails to make such a showing, the COC should be deemed improper, the readiness statement stricken as illusory, and—so long as the time chargeable to the People exceeds the applicable CPL 30.30 period—the case dismissed" (id.). 
"The key question in determining if a proper COC has been filed is whether the prosecution has 'exercis[ed] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery'" (Bay, 41 NY3d at 211). The People are required "'to make reasonable efforts' to comply with statutory directives" (id.). This is a "case-specific" analysis that "will turn on the circumstances presented" (id. at 212). While "[t]here is no rule of 'strict liability'; that is, the statute does not require or anticipate a 'perfect prosecutor,' good faith compliance with discovery obligations, alone, will not "cure a lack of diligence" (id.). Factors to consider when assessing due diligence include: "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id. at 212). The above factors are considered "non-exclusive" and "call[] for a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery" (People v Cooperman, 225 AD3d 1216, 1220 [4th Dept 2024]).
(III) Applicable Law and Analysis
(1) Gas Chromatography Materials
CPL 245.20 (1) (s) requires the prosecution to automatically disclose: "all records of calibration, certification, inspection, repair or maintenance of machines and instruments utilized to perform any scientific tests and experiments, including but not limited to any test of a person's breath, blood, urine or saliva, for the period of six months prior and six months after such test was conducted, including the records of gas chromatography related to the certification of all reference standards and the certification certificate, if any, held by the operator of the machine or instrument."
Following Defendant's arrest, the police measured his blood alcohol content (BAC) by analyzing his breath using a breath analysis instrument. The motion indicates that the instrument was a "Intoxilyzer Model 9000" — serial number 90-002040. Pursuant to CPL 245.20 (1) (s), the People were required to disclose all calibration records relating to this device for the period of six months before and six months after the test of Defendant's breath was conducted.
Defendant argues that the People only provided "simulator solution" documentation for this breathalyzer used for the years 2019 through 2021. Since this arrest did not occur until November 18, 2024, Defendant contends that the People did not satisfy their obligation of turning over up-to-date calibration records for the instrument used.
As explained in People v Sanchez (83 Misc 3d 671, 676 [Crim Ct, NY County 2024]), breathalyzer machines are regulated by the Department of Health ("DOH") and each machine used by law enforcement agencies must be on a list of approved machines (id, citing10 NYCRR 59.4). The regulations require the police to calibrate the machine each time a suspect's breath is tested. The calibration is done by first purging the air from the machine, and then testing the machine using a reference sample, which is referred to as a "simulator solution" (id at 676). The simulator solution is a sample that has been previously tested and certified as having .10% [*4]concentration of alcohol. To be considered properly calibrated, the machine must correctly evaluate the test sample within 0.01% margin of error (id).
The People affirm that the NYPD independently calibrates each breathalyzer machine on a semi-annual basis. These calibrations are performed using a range of simulator solutions, including .02%, .04%, .10%, and .30% concentrations. "Gas chromatography" is the process used to certify that these reference samples are accurate — that they indeed consist of the labeled alcohol concentrations. Gas chromatography records are generated and reflect whether the simulator solutions were properly tested to ensure accuracy (Sanchez at 677).
The simulator solutions are sourced from Guth Laboratories, a Pennsylvania-based entity, through CMI, a Kentucky-based third-party vendor. The New York State ("NYS") Laboratory procures and retains gas chromatography records for the simulator solutions with a .10% alcohol concentration. The gas chromatography records for the other concentrations, however (.02%, .04%, and .30%) are not analyzed by the NYS Laboratory. For these additional concentrations, the NYPD obtains these samples through CMI accompanied by a certification from Guth Laboratories verifying the accuracy of the concentrations, but no gas chromatography reports from Guth Laboratories are provided to the NYPD. There is no direct relationship between Guth Laboratories and the NYPD or NYS Laboratory. Thus, according to the People, these materials are not in their possession or control, and they were not subject to automatic discovery.
The People maintain that they turned over a comprehensive set of materials related to this Intoxilyzer machine, "including records that span from a period of six months prior to and six months following [D]efendant's test, in full compliance with the requirements set forth under CPL § 245.20 (1) (s)."
In reply, Defendant insists that the simulator solution material turned over was from 2019 through 2021, while this arrest occurred in November 2024. Without the updated calibration records, the People did not satisfy their obligations under CPL 245.20 (1) (s).
After the motion was deemed fully submitted, this Court requested supplemental submissions from the parties concerning the People's compliance with CPL 245.20 (1) (s). In its supplemental affirmation, the People explain that prior to filing their COC they turned over thirty-two (32) simulator solution reports, 32 gas chromatography reports, and seven (7) NYPD calibration reports spanning from 2021 through 2024 for this Intoxilyzer machine. However, no records were disclosed for 2025, because none were in existence prior to filing the January 28, 2025 COC. This is because calibration reports are generated twice yearly, in February and August of each calendar year. 
On June 17, 2025, the People obtained and disclosed the calibration report from February 2025 and filed a SCOC. The People state that this was not turned over sooner because the assigned ADA was out on medical leave from February through April 2025, but these records were turned over to defense counsel's office on other driving while intoxicated cases— since all discovery is served on the Bronx Defender's institutional discovery liaison. Attachments to the People's supplemental affirmation — a screenshot from the "calibration reports folder" — indicate that before the initial COC was filed, records were turned over from February and August 2024, which was within six months before Defendant's test. The People affirm that they turned over everything in their possession.
In a supplemental reply affirmation, Defendant maintains that the People only provided Guth Laboratories simulator solution reports from 2019 — 2021, and the People have not [*5]provided reports for the year of Defendant's arrest, 2024. Defendant objects to the late submission of the February 2025 calibration materials and asserts that service of such records upon other counsel on unrelated matter does not satisfy the discovery statute.
On this record the Court finds that the People have adequately discharged their discovery obligations as provided in CPL 245.20 (1) (s). Before filing their COC, the People turned over instrument calibration materials and records that covered the six-month period before Defendant's test — notably those from August 2024. The People have explained in their opposition and supplemental briefing that the material Defendant claims is missing is outside of their actual or constructive possession. The People were not required to purchase or subpoena gas chromatography records or materials generated by Guth Laboratories, which were not in their custody or control and equally available to the defense (Sanchez, 83 Misc 3d at 681; People v Colon, 80 Misc 3d 1219 [A] [Crim Ct New York County 2023]; People v Shirer, 84 Misc 3d 1242 [A] [Crim Ct Kings County 2024]).
The February 2025 calibration materials were not yet in existence at the time the People's COC was filed. These materials were eventually turned over in June 2025, when the People filed their supplemental brief on this motion as well as a supplemental COC. While the People's explanation for this belated disclosure is lacking, when weighed against the volume of relevant materials that were timely disclosed, and mindful that the statute does not require or anticipate a "perfect prosecutor," the Court declines to invalidate the COC because of this lapse (see People v Lawrence, 231 AD3d 1497, 1500 [4th Dept 2024]; see also People v Williams, 224 AD3d 998, 1006 n7 [3rd Dept 2024] [while the People should have tried to obtain and disclose more expeditiously considering the facts and circumstances of the case, it could not be concluded that the People failed to exercise due diligence]).
(2) Arrest Photographs
Defendant contends that the People failed to disclose all arrest photographs before filing their COC. Defendant argues that as part of arrest procedure, the NYPD routinely takes a frontal face, full body, and profile photograph of the arrestee. Here, no such photographs were provided. In opposition, the People affirm that they were informed by NYPD before the COC was filed that no colored arrest photographs of Defendant. After defense counsel's February 18, 2025 inquiry, the People promptly followed up with the arresting officer five more times, and called the 44th Precinct and desk sergeant for the 138 Command. The People were informed that no arrest photographs existed. 
The Court finds that the People have adequately detailed their diligence in ascertaining whether arrest photographs existed both before and after filing the COC. While the Court declines to credit contentions that colored arrest photographs may be "duplicative" of body-worn camera footage, the People nevertheless established their due diligence in ascertaining the existence of this discoverable material. The COC will not be invalidated where, as here, the discovery at issue does not exist (see, e.g., People v Polanco, 83 Misc 3d 1287[A], 2024 NY Slip Op 51235[U] [Crim Ct, Bronx County 2024]; People v Mendez, 84 Misc 3d 1238[A], 2024 NY Slip Op 51634[U] [Crim Ct, NY County 2024]).
(3) Activity Logs
Defendant argues that the People served fifteen (15) improper police officer activity logs [*6]when they served their COC. Defendant contends that some logs were not finalized, others were from the wrong date, still others said the officers were not at work that day or had no reported activity for the days provided. On March 3, 2025, the People clarified that seven (7) of the officers whose activity logs were provided did not actually work for the precinct that effectuated Defendant's arrest. The People then shared six (6) new, relevant activity logs related to Defendant's arrest. Defendant contends that the improper and incomplete activity logs were not rectified until over a month after the COC was filed.
In opposition, the People detail their efforts made to ascertain the existence of the activity logs. The People acquired logs for seventeen (17) officers and turned them over to the defense via OneDrive share on the date the COC was filed. After defense inquiry, the People investigated, and on March 3, 2025 they received and disclosed "updated" activity logs for six officers. The People were informed that the remaining officers were not employed by the NYPD's 44th Precinct. The People were also told that several body-worn camera videos were accidentally "tagged" to Defendant's arrest number, even though that footage was not part of this arrest. The People thus disclosed footage that did not relate to the subject matter of this case. The People assert that they re-watched the video for the seven officers and discovered that the subject matter of those videos did not pertain to the proceedings against this Defendant. As for the activity log for an eighth officer, the People never received any updated activity log, therefore none exist. Consequently, the People argue that the six "updated" activity logs were the only logs defense counsel was entitled to. The People further assert that all activity logs were provided with the initial COC, and any additional activity logs merely supplemented the discovery already initially shared.
In reply, Defendant claims that he has still not received all activity logs. Defendant notes that some of the body camera footage that was provided concerns a concurrent arrest. But it is not entirely unrelated as it shows Defendant being processed at the precinct simultaneously to another person being arrested. Defendant asserts that since activity logs in this case are either incomplete, missing, or otherwise improper, the People's COC must be deemed invalid.
Following review of the submissions the Court finds that the People made diligent attempts to comply with their discovery obligations with respect to the police officer activity logs. The People provided activity logs for seventeen officers at the time their COC was filed. It is evident that the People acted quickly and diligently to rectify issues with six police officer logs promptly after being advised of the problem by defense counsel. The Court credits the People's statement that the updated activity logs supplemented what was already provided and their late disclosure must be weighed against the substantial volume of material that was initially disclosed (see, e.g., People v Dieudonne, 83 Misc 3d 1237[A] 2024 NY Slip Op 50877 [U] [Crim Ct, Kings County 2024]). As for the other police officer logs, the People have made an adequate record that they engaged in diligent inquiry and determined that the material does not relate to the arrest of this defendant. The People essentially over-shared body-worn camera footage that was mistakenly tagged under this arrest number, even though not all the officers associated with the footage were involved with this arrest. Since the People were not required to turn over activity logs unrelated to the subject matter of this case, they cannot be penalized for nondisclosure.
(4) Bay Analysis
When considering the factors elucidated in Bay, the People established that they exercised due diligence and made reasonable inquiries before filing their COC. The People made adequate inquiries as to the non-existence of color arrest photographs. The People did provide activity logs for seventeen officers when the COC was filed. After apprised of problems with those logs, the People promptly investigated and corrected the issue with updated complete logs or advised that the body-worn camera footage established that many of the logs were unrelated to the subject matter of this case. Considering the missing or belatedly disclosed material against the substantial volume of discovery timely provided weighs in favor of finding that the People exercised due diligence. As for the simulator solution reports, as discussed above the People have shown that they have complied with CPL 245.20 (1) (s) by providing relevant materials for the time frame required, their late disclosure of the February 2025 materials is excusable considering the circumstances of this case, and any missing material was not in their custody and control. Upon a "holistic assessment" of the People's discovery efforts as opposed to a strict line-by-line item test, the People exercised due diligence in complying with their discovery obligations (Cooperman, 225 AD3d at 1220). The People's January 28, 2025 COC and SOR, as well as the SCOC's, are therefore DEEMED VALID.
Defendant was arraigned on November 18, 2024 and released on his own recognizance. The matter was adjourned to December 5, 2024, for the People to file a COC. 17 days are chargeable to the People.
On December 5, 2024, the People had not yet filed a COC and the Court was awaiting Defendant's screening and assessment results. The matter was adjourned to January 31, 2025. The People filed their COC and SOR off calendar on January 28, 2025. As of that date, 71 total days were chargeable to the People. Since the People's COC, SOR, and SCOC's are deemed valid, the CPL 30.30 speedy trial time has not expired.
The branch of Defendant's motion to suppress evidence is denied, but pre-trial hearings pursuant to Huntley/Dunaway, Ingle/Rossi/Johnson/Mapp/Ayala/Dunaway are granted. The Court further respectfully refers those branches of the motion seeking Sandoval and Molineux/Ventimiglia hearings to the trial court. Defendant's request to reserve the right to make additional motions is denied, subject to her rights under CPL 255.20 (3) to move for further leave upon good cause shown.
(IV) Conclusion
Accordingly, it is hereby
ORDERED, that the branch of Defendant's motion to dismiss the accusatory instrument pursuant to CPL 30.30 is DENIED, and it is further
ORDERED, that the branch of Defendant's motion for an order suppressing evidence is DENIED; and it is further
ORDERED, that the branch of Defendant's motion seeking a Huntley/Dunaway pre-trial hearing is GRANTED; and it is further
ORDRERED, that the branch of Defendant's motion seeking a Ingle/Rossi/Johnson/Mapp/Ayala/Dunaway pre-trial hearing is GRANTED; and it is further
ORDRERED, that the branch of Defendant's motion seeking Sandoval and Molineux/Ventimiglia hearings are REFERRED to the trial court; and it is further
ORDERED, that the branch of Defendant's motion seeking permission to reserve the right to make additional motion is DENIED subject to his rights under CPL 255.20 (3) to move [*7]for further relief upon good cause shown.
Dated: July 16, 2025
HON. SCOTT M. KROMPINGER, J.C.C.