People v Duhaney (2025 NY Slip Op 51737(U))

[*1]

People v Duhaney

2025 NY Slip Op 51737(U)

Decided on October 30, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 30, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Kelsy Duhaney, Defendant.

Docket No. CR-004042-25BX

For the Defendant: 
The Legal Aid Society
(by: Sally Tyre, Esq.)
For the People: 
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Chandler Eller)

Deidra R. Moore, J.

On January 28, 2025, Kelsy Duhaney (hereinafter referred to as "Defendant"), was arrested and charged with Vehicle and Traffic Law ("V.T.L.") § 1192[3], driving while intoxicated, and related charges. Defendant was arraigned in Bronx County Criminal Court on January 30, 2025.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30[1][b] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
In the alternative, Defendant moves to suppress police observations and testimony about her alleged refusal to submit to a chemical test, asserting that these are the fruit of an illegal stop (Dunaway v New York, 442 US 200 [1979]; Mapp v Ohio, 367 US 643 [1961]; People v Johnson, 134 Misc 2d 474 [Crim Ct, Queens County 1987]). Defendant also moves to suppress properly noticed statements (People v Huntley, 15 NY2d 72 [1965]).
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution exercised due diligence and made reasonable inquiries and efforts to disclose discoverable materials prior to filing the certificate of compliance. Defendant's motion to dismiss pursuant to C.P.L. §§ 245.50[4][c] and 30.30 is DENIED.
Defendant's motion for Mapp/Huntley/Dunaway/Johnson hearings is GRANTED.
The People are hereby ordered to furnish additional discovery, discussed infra.
 RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
On January 30, 2025, Defendant was arraigned on a top charge of V.T.L. § 1192[3], [*2]common law driving while intoxicated, an unclassified misdemeanor. The accusatory instrument alleges that Defendant was observed operating a motor vehicle, exhibited signs of intoxication, and refused to take a breath alcohol test (Criminal Complaint at 2). The Report of Refusal, filed by the prosecution at arraignment, states that Defendant "indicated [her] refusal" by "not provid[ing] sufficient sample within time (2 attempts)." The case was adjourned to March 11, 2025, for conversion and discovery compliance.
On March 11, 2025, the case was unconverted, and discovery had not yet been served. The case was adjourned to May 2, 2025. On March 26, 2025, the People filed and served a supporting deposition. On April 7, 2025, the People filed and served a certificate of compliance ("COC") and statement of readiness ("SOR").
At the court appearance on May 2, 2025, defense counsel indicated that she needed additional time to review discovery. The parties were ordered to diligently confer regarding any outstanding discovery, and the case was adjourned to June 20, 2025, for discovery conference.
On May 15, 2025, defense counsel e-mailed the assigned prosecutor, asserting that multiple discoverable items had not been disclosed. The prosecution shared additional discovery with the defense and filed and served supplemental certificates of compliance on May 16, 2025, and May 20, 2025.
On June 20, 2025, the parties appeared for a discovery conference, and the instant motion schedule was set at Defendant's request. By motion dated July 11, 2025, Defendant moved to invalidate the certificate of compliance and dismiss the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], alleging that the prosecution was not ready for trial within the statutorily allotted ninety-day period. The People filed their opposition on August 22, 2025. The defense reply followed on September 25, 2025.

LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a misdemeanor punishable by more than three months' imprisonment (C.P.L. § 30.30[1][b], and V.T.L. § 1193[1][b][i]).
The speedy trial clock is statutorily bound to the prosecution's discovery obligations under C.P.L. Article 245 (C.P.L. §§ 245.50[3] and 30.30[5]). Before the People may be deemed ready for trial — thus tolling the speedy trial clock — they must disclose "material and information" in their possession which fall into any of twenty-two enumerated categories (C.P.L. § 245.20[1]). Discoverable items possessed by "any New York state or local police or law enforcement agency" are deemed to be in the prosecution's possession (C.P.L. § 245.20[2]). Where material otherwise discoverable under C.P.L. § 245.20[1] exists but is not in the prosecution's custody or control, the People are nonetheless required to "make a diligent, good faith effort to ascertain the existence of [this material]" and make it available to the defense (CP.L. § 245.20[2]). The People are not required, however, to obtain by subpoena duces tecum material or information which the defense may obtain in this manner (C.P.L. § 245.20[2]).
Once the People have fulfilled their discovery obligations, they must file with the court and serve on the defense a certificate of compliance, certifying that they have exercised due diligence and made reasonable inquires and efforts to obtain and disclose material subject to discovery under C.P.L. § 245.20[1] (C.P.L. § 245.50[1]). Absent "an individualized finding of special circumstances," the People "shall not be deemed ready for trial" until they have filed a [*3]valid certificate of compliance (C.P.L. § 245.50[3]).
A COC's validity is conditioned upon the exercise of due diligence prior to the COC's filing, and the People bear the burden of demonstrating that they acted with such diligence. Nevertheless, "belated disclosure[s] will not necessarily establish a lack of due diligence or render an initial COC improper" (People v Bay, 41 NY3d 200, 212 [2023]). Analysis of the People's due diligence is "fundamentally case-specific," and "will turn on the circumstances presented" (id.).
C.P.L. Article 245 guides courts tasked with assessing due diligence in the discovery context. Pursuant to C.P.L. § 245.50[5], courts must analyze the totality of the People's efforts to comply with their obligations under Article 245, rather than assessing the People's efforts "item by item." C.P.L. § 245.50[5][a] articulates a non-exhaustive list of factors for courts to consider when examining due diligence, discussed infra, while C.P.L. § 245.50[5][b] advises that all of the listed factors must be weighed, with no one factor being determinative.

DISCUSSION
I. The Parties' Arguments
A. The Defendant's Argument
The defense argues that the People did not exercise due diligence prior to filing the certificate of compliance on April 7, 2025, asserting that numerous discoverable items were shared after the COC's filing and that additional discoverable items remain outstanding.
First, the defense argues that the prosecution belatedly disclosed multiple police reports which are automatically discoverable under C.P.L. § 245.20[1][e], including the activity log report for one officer, two property vouchers, and the Intergraph Computer-Aided Dispatch ("ICAD") report.
The defense further contends that the People have yet to disclose numerous items, including the pre-arraignment notification report and the "ZOLPA" report, which the defense asserts must be disclosed pursuant to C.P.L. § 245.20[1][e]; the body worn camera ("BWC") audit trails, which the defense maintains are also discoverable under C.P.L. § 245.20[1][e]; gas chromatography records generated by Guth Laboratories for simulator solutions used to calibrate the breath analysis instrument, which Defendant argues are discoverable under C.P.L. § 245.20[1][s]; and the Central Personnel Indexes ("CPIs") for testifying officers, which the defense asserts are discoverable under C.P.L. § 245.20[1][k].
B. The People's Argument
The People affirm that the ICAD report and property vouchers flagged by defense counsel were disclosed prior to the COC's filing. Defense counsel e-mailed the assigned prosecutor on May 15, 2025, noting that one page of a property voucher was missing, and that the second page of the ICAD was illegible (People's Opposition Exhibit 3). On May 16, 2025, the assigned prosecutor sent a complete copy of the property voucher flagged by defense counsel, as well as a second property voucher that the assigned prosecutor believed had not been previously disclosed. Upon further review, however, the assigned prosecutor realized that the second property voucher had been shared in the arrest packet on April 7, 2025. On May 20, [*4]2025, the assigned prosecutor sent a more legible version of the ICAD.
The prosecution asserts that an inadvertent error caused the omission of the flagged activity log report. Within five days of notification by defense counsel, however, the assigned prosecutor obtained and disclosed this document.
The People contend that the remaining items, including the Guth Laboratories gas chromatography records, the BWC audit trails, the ZOLPA, the pre-arraignment notification card, and the Central Personnel Indexes, are not discoverable. Regarding the gas chromatography records, the People argue that these documents are not related to the subject matter of the case because the Defendant refused to submit to a breath analysis test and thus the People will not introduce any chemical test results at hearing or trial. The People further argue that these documents are not in their actual or constructive possession, as the records are maintained by Guth Laboratories, a private lab based in Pennsylvania, and must be purchased through CMI, a third-party vendor.
The People argue that the audit trails are not discoverable, asserting that these items do not relate to the subject matter of the case. The People similarly argue that the ZOLPA and pre-arraignment notification card are administrative documents which detail the arraignment process and thus do not relate to the subject matter of the case. The prosecution notes that the pre-arraignment notification card is a court-generated document provided to both the prosecution and defense at arraignment; moreover, the information noted on the pre-arraignment card is duplicative of that contained in many other discoverable materials, as the pre-arraignment card bears only the defendant's name, the date and time of arrest, the arrest number, the precinct, the top charge, and the arresting officer's name and shield number.
Finally, with regard to the Central Personnel Indexes, the prosecution affirms that the Giglio sheets submitted for each testifying officer contain all substantiated and unsubstantiated allegations (People's Opposition at 22-23).
II. The Court's Analysis
A. Guth Laboratories Gas Chromatography Records for Lot Numbers
C.P.L. § 245.20[1][s] requires the prosecution to disclose calibration records pertaining to the breath analysis instrument used to administer a defendant's chemical test; these records must be disclosed for calibrations which occur in the six months preceding and following the test. C.P.L. 245.20[1][s] provides, in relevant part, that "[i]n any prosecution alleging a violation of the vehicle and traffic law," the People must disclose "all records of calibration, certification, inspection, repair or maintenance of machines and instruments utilized to perform any scientific tests and experiments, including but not limited to any test of a person's breath, blood, urine or saliva, for the period of six months prior and six months after such test was conducted, including the records of gas chromatography related to the certification of all reference standards and the certification certificate, if any, held by the operator of the machine or instrument."
The People maintain that they are not required to disclose gas chromatography records pursuant to C.P.L. § 245.20[1][s] in the instant matter, and that they disclosed some of these records as an act of good faith. The People reason that the records do not relate to the subject matter of the case because Defendant refused to take the breath test and thus, they do not intend to introduce the results of a chemical test (People's Opposition at 17).
The People's argument is flawed, however, for two reasons. First, the People's automatic discovery obligations extend beyond that which they intend to introduce at hearing or trial. A [*5]large volume of material that will not be introduced as evidence is nonetheless discoverable under the plain language of C.P.L. Article 245. Second, the working condition of the Intoxilyzer 9000 is a material issue in the instant matter. Though the criminal complaint alleges that Defendant refused the breath test, the Report of Refusal clarifies that Defendant's behavior was deemed a refusal because she did not provide a sufficient breath sample after two blows into the instrument. Calibration records are thus vital to the defense, who must evaluate whether a problem with the machine, rather than the volume of the breath sample, could have caused the sample to be read as insufficient.
The Intoxilyzer 9000 is calibrated by running reference samples, referred to as "simulator solutions," through the machine. Each simulator solution contains a labeled alcohol concentration (People v Sanchez, 215 NYS 3d 259, 267 [Crim Ct, New York County 2024). In February and August of each year, the NYPD calibrates their Intoxilyzer 9000 machines "using a range of simulator solutions, including .02%, .04%, .10%, and .30% concentrations" (People v Islas, 2025 NY Slip Op 51106(U) [Crim Ct, Bronx County]). A properly calibrated machine must "correctly evaluate the test sample within 0.01% margin of error" (id.).
Specific simulator solution samples which have been taken from larger batches are referred to as "lots" and assigned "lot numbers" for identification. In order to verify that a simulator solution lot contains its labeled alcohol concentration, it is tested using a method called gas chromatography (People v Sanchez, 215 NYS 3d 259, 267 [Crim Ct, New York County 2024). Gas chromatography records for a particular lot number document this verification testing method and the results.
The NYPD obtains their simulator solution lots from CMI, a "Kentucky-based third-party vendor," who in turn obtains the solutions from Guth Laboratories, a private lab based in Pennsylvania (People's Opposition at 18). When the NYPD purchases simulator solution lots from CMI, the lots are accompanied by certificates of analysis verifying that the lots contain their labeled alcohol concentration. The lots are not, however, accompanied by full sets of records documenting the gas chromatography process. When the simulator solutions are received from CMI, the New York State Police Lab tests the lots with .10% concentration and generates a full set of gas chromatography records for these lots; it is the .10% solutions which are used to conduct actual breath tests. New York State Labs does not, however, test the lots containing .02%, .04%, and .30% concentrations, which are used only for calibration of the Intoxilyzer 9000, and not for conducting breath tests (People v Sanchez, 215 NYS 3d 259, 267 [Crim Ct, New York County 2024]).
In People v Colon, the court conducted a discovery hearing regarding gas chromatography records for simulator solutions obtained by the NYPD from Guth Laboratories (196 NYS3d 695 [Crim Ct, New York County 2023]). At the hearing, Sergeant Donald Schneider of the NYPD Highway District testified that, to his knowledge, Guth Laboratories manufactures the only simulator solution compatible with the Intoxilyzer 9000, but that the NYPD purchases the simulator solution through CMI, the company that manufactures and maintains the Intoxilyzer 9000, because Guth Laboratories is not an approved vendor for New York (id.). Sgt. Schneider further testified that when CMI purchases simulator solution lots from Guth Labs, CMI does not purchase the accompanying gas chromatography records. As a result, the process to obtain the gas chromatography records is expensive and time consuming; when Sgt. Schneider purchased gas chromatography records for nine lots from CMI, the cost was $475 per lot, and CMI took four months to send the records (id.).
In the instant matter, the gas chromatography records for lot number 24350 were disclosed, as this was a .10% lot that was reanalyzed by the New York State Police Lab. The defense requests gas chromatography records for an additional eight lots which were used to calibrate the Intoxilyzer 9000 used by Defendant in the six months before and after Defendant's test, including lots numbered 24150, 24430, 24170, 24410, 23060, 23220, 24140, and 24190.
Several trial courts considering the issue have held that gas chromatography records possessed by Guth Laboratories are outside of the People's custody and control and thus are not subject to automatic disclosure (People v Islas, 2025 NY Slip Op 51106(U) [Crim Ct, Bronx County]; People v Sanchez, 215 NYS 3d 259 [Crim Ct, New York County 2024]; People v Colon, 196 NYS3d 695 [Crim Ct, New York County 2023]; People v. Harris, 240 NYS3d 919 [Crim Ct, Kings County 2025]; People v. Shirer, 222 NYS3d 380 [Crim Ct, Kings County 2024]; People v Mendez, 2025 NY Misc LEXIS 8284 [Crim Ct, New York County]). Other trial courts have ruled that, while non-disclosure of gas chromatography reports from Guth Laboratories did not render the COC invalid, these documents were nevertheless subject to automatic discovery (see People v Duran, 83 Misc 3d 1007, 1009-1010 [Crim Ct, Bronx County 2024] ["[I]t is respectfully submitted that the People cannot credibly argue that discoverability of this reporting should be conditioned upon whether the NYPD elects to purchase individual Lot numbers where the NYPD has agency, authority, and a legal right to obtain analytics for the Intoxilyzer machines they employ."]; People v Comas, CR-019446-23BX, Davila, J. [Crim Ct, Bronx County 2024] [finding that the People constructively possessed the gas chromatography records from Guth Labs for simulator solution lots used to calibrate the Intoxilyzer 9000]).
As the discoverability of gas chromatography records possessed by Guth Labs has not been settled, the Court declines to invalidate the COC for non-disclosure of these records. Nevertheless, it is clear that the People possess Guth Laboratories gas chromatography records for some lot numbers; the records for at least nine lots were previously purchased (People v Sanchez, 215 NYS 3d 259, 267 [Crim Ct, New York County 2024]), and on occasion, courts have ordered the People to obtain Guth Labs gas chromatography records for additional lots (People v Comas, CR-019446-23BX, Davila, J., [Crim Ct, Bronx County 2024]). Consequently, the People are ordered to conduct a thorough inquiry to determine whether any Guth Laboratories records for the requested lot numbers are already possessed by the NYPD, by the Bronx County District Attorney's Vehicle Crimes Bureau, or by any other unit or agency under the People's control. The People are directed to file an affirmation detailing their efforts and the results of this inquiry within fifteen [15] business days.
B. BWC Audit Trails
The People contend that the audit trails for the disclosed body worn camera files are not discoverable, asserting that these items "do not relate to the subject matter of the case" (People's Opposition at 21). The Court disagrees.
Audit trails are "reports of data and notes created by the NYPD" for body worn camera files (People v Ballard, 82 Misc 3d 403, 408 [Crim Ct, Queens County 2025]). Evidence audit trails contain a host of information about a body worn camera file, including its start time and upload time, as well as "which users accessed and streamed the video" (id. at 409). Evidence audit trails also contain categories, tags, and notes added by officers, including notes about the level of police intrusion involved in a stop, as well as demographic information about individuals [*6]stopped in some encounters (id.; see also People v Holly, 2025 NY Slip Op 50448(U) [Crim Ct, New York County]). Device audit trails record specific information about the camera itself, such as when it was activated, when it was charged, and when it was deactivated (People v Ballard, 82 Misc 3d 403, 409 [Crim Ct, Queens County 2025]). Device audit trails can also convey the reason that a body worn camera became inactive — indicating, for instance, whether a device was deactivated due to a dead battery or human action (People v Holly, 2025 NY Slip Op 50448(U) [Crim Ct, New York County]).
Because audit trails contain categories, tags, and notes entered by officers, they are discoverable under C.P.L. § 245.20[1][e]. (See People v. Rollerson, 206 NYS3d 517 [Crim Ct, Bronx County 2024] ["Although the words "audit trail" do not appear in the statute, a device audit trail is nonetheless a police report subject to mandatory disclosure pursuant to CPL § 245.20[1][e]."].) Because audit trails may also contain information which could be used to impeach a testifying officer, they are also discoverable under C.P.L. § 245.20[1][k]. (See People v Bresnan, 85 Misc 3d 280, 284-285 [Just Ct, Monroe County 2024] ["The majority of courts that have addressed this issue agree with Defendant that C.P.L. §245.20 dictates that BWC audit logs be produced by the People as part of their automatic discovery responsibility."].) Consequently, the prosecution must disclose the audit trails for all body-worn camera footage to the defense within fifteen [15] business days.
C. The ZOLPA and Pre-Arraignment Notification Card
The prosecution argues that the ZOLPA is not discoverable because it does not relate to the subject matter of the case. Again, the Court disagrees.
Generated from the NYPD Online Prisoner Arraignment Database, the ZOLPA tracks the progress of a case between arrest and arraignment. The ZOLPA contains multiple pieces of information about the case, including the name of the arresting officer, the top arrest charge, information about whether an arrestee was held for arraignment or released with a desk appearance ticket, as well as the specific times of particular events occurring between arrest and arraignment. The ZOLPA may also contain notes entered by the arresting officer. Consequently, the Court finds that this document is discoverable pursuant to C.P.L. § 245.20[1][e] (see People v. JMW, 2024 NY Slip Op 51249(U) [Crim Ct, Kings County] ["Inasmuch as the Prisoner Arraignment Database documents the names of the officers that participated in the defendant's arrest processing, contains notes entered by these officers about the defendant, and documents information such as how long the defendant was in custody and where he was lodged prior to arraignment, this item is automatically discoverable."]). The prosecution is ordered to disclose this document to the defense within fifteen [15] business days.
The Court credits the People's assertion that the pre-arraignment notification card is provided to both parties at arraignment. Thus, the People are not obligated to disclose this item as part of their discovery obligations under C.P.L. 245.20[1][e].
D. Central Personnel Indexes
Regarding the Central Personnel Index sheets, the Court agrees with the People that these indexes are not automatically discoverable. Here, the assigned prosecutor affirms that she has disclosed records for all substantiated or unsubstantiated complaints. Multiple courts have held [*7]that exonerated and unfounded complaints are not automatically discoverable as potential impeachment material (see People v Soto, 193 NYS3d 677 [Crim Ct, New York County 2023] ["In the context of CPL 245.20[1][k][iv], courts have typically ruled that allegations investigated by the IAB and CCRB deemed substantiated or unsubstantiated, or cases that are pending, must be disclosed, whereas, exonerated and unfounded allegations may not be."]; see also People v Barralaga, 153 NYS3d 808 [Crim Ct, New York County 2021]; People v Montgomery, 159 NYS3d 655 [Sup Ct, New York County 2022], People v Castellanos, 148 NYS3d 652 [Sup Ct, Bronx County 2021]). Thus, the People have fulfilled their discovery obligations with respect to the CPIs.
E. Due Diligence Under C.P.L. § 245.50[5]
Belated disclosures do not, in and of themselves, indicate a lack of due diligence. The Court of Appeals has made clear that, with regard to discovery compliance, "there is no rule of strict liability; that is, the statute does not require or anticipate a perfect prosecutor" (People v Bay, 41 NY3d 200, 204 [2023]). At the same time, "good faith. . . is not sufficient standing alone and cannot cure a lack of diligence" (id.).
When assessing due diligence, courts must consider, along with any other relevant factors, the efforts made by the prosecutor to comply with the requirements of Article 245; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and, whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial (C.P.L. § 245.50[5]).
Here, the Court finds that the balance of C.P.L. § 245.50[5][a] factors weighs in favor of a finding that the People exercised due diligence. As a prosecution for misdemeanor driving while intoxicated, this case does not appear to be particularly complex. Compared to the amount of discovery shared, however, the volume of belatedly disclosed material is exceptionally small, comprising only the activity log report for one officer and the second page of one property voucher. The People's explanation for the discovery lapse, inadvertent error, is a reasonable one in the context of such a minimal omission. Moreover, these two documents appear to be of limited substantive value and were promptly disclosed upon notification by defense counsel that they had been omitted. The defense articulates no prejudice or impediment to preparation as a result of this belated disclosure.
Though the People did not disclose discovery within the thirty-five-day window mandated by C.P.L. § 245.10[1][a][ii], they disclosed material sixty-seven days after arraignment, narrowly missing the sixty-five-day window allowed without request for extension by C.P.L. § 245.10[1][a] when discovery is voluminous. The prosecution's disclosed communications with the NYPD target specific outstanding items, demonstrating a timely review of discovery in the People's possession (People's Opposition Exhibit 1).
Finally, the People articulate a good faith belief, based on conflicting trial level case law [*8]and a lack of appellate authority, that certain materials, including the BWC audit trails, the Guth Laboratories gas chromatography records, and the ZOLPA, were not discoverable. Though the Court disagrees, the People's reasonable belief that these items were not discoverable does not render their certificate of compliance invalid. As such, the certificate of compliance, dated April 7, 2025, is valid.

THE CPL § 30.30 CALCULATION
The criminal action commenced with the filing of the accusatory instrument on January 30, 2025. The first day counted for speedy trial purposes is the next day, January 31, 2025 (People v Morrison, 231 NYS 3d 922 [Crim Ct, Bronx County 2025]). The prosecution filed and served the COC on April 7, 2025. As discussed supra, the COC was valid and tolled the speedy trial clock (January 31, 2025 — April 7, 2025 = 67 days).
Sixty-seven [67] are chargeable to the People.

CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is DENIED.
Defendant's motion for suppression is GRANTED to the extent that the Court orders pre-trial Mapp/Huntley/Dunaway/Johnson hearings.
The prosecution is ORDERED to disclose the audit trails and the ZOLPA within fifteen [15] business days. The prosecution is ORDERED to conduct a thorough search for Guth Laboratories gas chromatography records in its actual possession, or in its constructive possession via the NYPD, and to file an affirmation detailing its efforts and the results within fifteen [15] business days.
This constitutes the opinion, decision, and the order of the Court.
Dated: October 30, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.